UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

TERRY GIST,                          )
                                     )
        *Plaintiff*,                 )
                                     )
v.                                   )        Case No.  2:08-cv-227
                                     )        Judge Mattice
TVA BOARD OF DIRECTORS *et al*,      )
                                     )
        *Defendants*.                )

## MEMORANDUM AND ORDER

Plaintiff Terry Gist brings this action against Defendants, the Tennessee Valley Authority Board of Directors and the individual directors, alleging that Defendants discriminated against him in employment decisions in violation of Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and the Americans with Disabilities Act, by refusing to hire him for various positions because of his race and his disabilities. Defendants have filed a Motion for Partial Summary Judgment [Court Doc. 20].

For the reasons set forth below, Defendants' Motion for Partial Summary Judgment [Court Doc. 20] will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on motion for summary judgment, determine whether a jury could reasonably find by a

preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

The facts, viewed in the light most favorable to the Plaintiff, are as follows.

Plaintiff Terry Gist began to work for the Tennessee Valley Authority ("TVA") as a lineman in 1990 and currently holds that same position in Morristown, Tennessee. (Court Doc. 28, Pl.'s Resp. to Def.s' Mot. for Partial Summ. J. at 2.) Plaintiff is a black male and is now 49 years old. (*Id.*) Beginning in 2005, Plaintiff applied for several different positions with TVA. (Court Doc. 21, Def.s' Mem. in Supp. of Mot. for Partial Summ. J. at 2.) Two of these positions, advertised as Vacant Position Announcements ("VPA") 22052 and 22393, were lineman positions in Knoxville. (*Id.*) Another, advertised as VPA 21166, was a lineman foreman position in Knoxville. (*Id.*) After Plaintiff was not selected for those positions (the "Knoxville positions") in 2005 and 2006, Plaintiff also applied for a lineman foreman position in Morristown, advertised as VPA 22690, in 2007 (the "Morristown position"). (*Id.*) Plaintiff learned that he was not selected for that position on June 4, 2007. (Court Doc. 22-3, Final Agency Decision ("FAD") at 1.) Plaintiff contacted an Equal Employment Opportunity ("EO") counselor on June 7, 2007 and initiated a discrimination

complaint after he was not selected for the Morristown position.  (*Id.*)

Plaintiff has suffered various physical injuries while working as a lineman for TVA. (Pl.'s Resp. at 2.)  In 1993, he injured his ankle and his treating physician had to remove blood clots from the ankle.  (Court Doc. 22-5, Gist Sworn Statement at 2-3.)  Plaintiff's ankle still causes problems from time to time when he is performing his work duties.  (*Id.* at 3.)  In 1999, Plaintiff twisted his knee and had surgery on both his ankle and knee.  (*Id.* at 3-4.)  Plaintiff experienced knee problems again as a result of his work duties, had to have fluid drained from it several times, and elected therapy instead of surgery.  (*Id.* at 4-5.)  Plaintiff still has problems with his ankle locking up, and his 43-mile commute to work seems to aggravate the condition.  (*Id.* at 5-6.)  Plaintiff stated that he can do the work of his current lineman position out of the bucket, but has had various medical restrictions imposed by his doctor and he cannot climb poles, walk on rough terrain, or squat.  (*Id.* at 7-8.)

## III.    ANALYSIS

Defendants move for summary judgment in two areas.  First, Defendants allege that Plaintiff has failed to establish a *prima facie* case of disability discrimination under the Rehabilitation Act because, as Plaintiff has alleged both race *and* disability discrimination, he has therefore not demonstrated that the adverse employment action was *solely* based on his disability, an element of his *prima facie* case under the Rehabilitation Act.  Second, Defendants assert that any discrimination claims Plaintiff has regarding the lineman and lineman foreman positions in Knoxville are time-barred, because Plaintiff failed to exhaust the necessary administrative remedies.

## A.      Rehabilitation Act Claim

The Rehabilitation Act reads, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  Defendants assert that Plaintiff cannot prove a *prima facie* case of disability discrimination under the Rehabilitation Act because one of the elements is that Plaintiff must show that he suffered an adverse action solely due to his disability.  Because Plaintiff alleges both race and disability discrimination, Defendants contend that he cannot establish this element of his *prima facie* case.  (Def.s' Mem. at 8-9.)  Plaintiff argues that the assertion of race and disability discrimination are alternative pleadings and the mere assertion of Plaintiff's Title VII claim cannot defeat his Rehabilitation Act claim.  (Pl.'s Resp. at 8-12.)  Furthermore, Plaintiff disputes that this is an element of his *prima facie* case.  (*Id.*)

To establish a *prima facie* case of employment discrimination on the basis of disability pursuant to the Rehabilitation Act of 1973, a plaintiff must prove the following:

> (1) [T]hat he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open.

*Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007).[1]  In *Jones*, the United States Court of Appeals for the Sixth Circuit specifically rejected the proposition advanced by the defendant there, the United States Postal Service, that the plaintiff was required to prove at the *prima facie* stage that the employment action occurred solely because of his disability.  *Id.* at 405-06.  The *Jones* court acknowledged that an earlier Sixth Circuit decision had stated such, but the court indicated that this was an erroneous conclusion and directly in conflict with its decision in *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996).  *Id.*  The *Jones* court stated, in relevant part:

> In *Monette,* the court explained that "[p]roof of these five facts [constituting a prima facie case] . . . creates a mandatory inference that the employer intentionally discriminated against the disabled individual . . . 'solely' because of his or her handicap."  90 F.3d at 1185.  An inference that the adverse action occurred "solely by reason of" the plaintiff's disability, in short, is *the result* of the prima facie test, not an element of it. If the law were otherwise, the *McDonnell Douglas* framework would serve virtually no purpose in cases brought pursuant to the Rehabilitation Act and other single-motive statutes.

*Jones*, 488 F.3d at 406.

The Court acknowledges Defendants' argument that the Sixth Circuit case law is confusing in this respect, because later cases have included the "solely by reason of disability" element in the plaintiff's *prima facie* case, but the Court finds the reasoning of *Monette* and *Jones* to be persuasive.  (Court Doc. 31, Def.s' Reply at 7.)  The *Jones* court

---

[1]    Defendants cite to an alternative test which has been articulated by the United States Court of Appeals for the Eleventh Circuit.  *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).  The tests are substantially the same, but one of the Eleventh Circuit elements is that the plaintiff was excluded from the job "'solely by reason of' his handicap.'"  *Id.* (quoting from 29 U.S.C. § 794(a)).  Although it appears that the Eleventh Circuit and others may rely on this statutory language as an element of a plaintiff's *prima facie* case, the Court finds that the Sixth Circuit has concluded differently, and found the language to be part of plaintiff's overall burden, not part of the plaintiff's burden to establish a *prima facie* case.

properly noted that the initial list of factors in *Monette* were not the elements for a *prima facie* case; rather, the factors were those necessary for the plaintiff to prove to succeed on his or her *overall claim* of discrimination. *See Monette*, 90 F.3d at 1178. *Monette* listed the elements of the *prima facie* case of disability discrimination in another part of the opinion. *Id.* at 1185. Later Sixth Circuit cases stated that the first set of factors comprised the plaintiff's *prima facie* case, but this is simply an incorrect reading of the language in *Monette*. *See Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) (listing the first set of factors and citing to *Monette*); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998) (same); *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998) (same).

Because the burden at the *prima facie* stage is meant to be quite low, the Court finds that a plaintiff's burden would be illogically, and perhaps unattainably, high if he or she were required to establish that an adverse employment action occurred *solely* because of the disability at the *prima facie* stage. Accordingly, the Court rejects Defendants' argument that Plaintiff cannot establish his *prima facie* case on this basis.

The Court notes that none of the elements considered by the Court to be part of Plaintiff's *prima facie* case have been in dispute. Therefore, the Court construes the facts alleged in a light most favorable to Plaintiff and, in the absence of dispute, the Court finds that Plaintiff has established all elements of his *prima facie* case.[2] Normally, at this

---

[2] The Court also finds that there is sufficient evidence in the record to establish at least four of the five elements.

First, the Court finds that Plaintiff has established that he is "otherwise qualified" for the lineman foreman position. Plaintiff is currently a lineman with the restriction that he cannot climb poles. (*Id.* at 7-8.) Donna Bruno testified that "the foreman position description requires that all candidates be able to perform the [lineman] position functions as well as supervisor functions." (Court Doc. 28-1, Bruno Sworn Statement at 6.) Plaintiff was, and is, performing the lineman position functions, accommodated for his disability.

juncture, the Court would proceed by assessing the direct evidence of discrimination, or by analyzing the indirect evidence with the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).[3] *See Burns v. City of Columbus Dept. of Public Safety, Div. of Police*, 91 F.3d 836, 843 (6th Cir. 1996) (stating that *McDonnell Douglas* and *Burdine* apply to Rehabiliation Act claims).

In the briefing on this Motion, however, Plaintiff did not have an opportunity to set forth direct evidence of discrimination or evidence of pretext. Because Defendants' argument was focused on Plaintiff's inability to establish his *prima facie* case, Defendants

---

(Gist Sworn Statement at 7.) Second, Plaintiff has been "dual rated" as a lineman and foreman since 2000, and served as foreman for a period of months after his supervisor's retirement. (Gist Sworn Statement at 15, 21.)

Third, TVA knew of Plaintiff's disability and medical restrictions. Carter Gibson testified that he was told that Plaintiff did not meet the minimum qualifications for the lineman foreman job because he could not climb. (Gibson Sworn Statement at 7.) Ronnie Massengill, Plaintiff's direct supervisor, knew he had "bad legs," knew that he could not climb, and testified that Plaintiff gave him medical records to send to the home office in Johnson City. (Massengill Dep. at 27-28.)

Fourth, Plaintiff has proved that he suffered an adverse employment action because he was not selected for the lineman foreman position in Morristown. Finally, he has established that the position was filled by an individual who is not disabled.

The only element that might reasonably be viewed as in dispute is whether Plaintiff is disabled. Although Plaintiff has submitted evidence that he suffers from a disability, it is unclear whether Plaintiff can substantiate a disability pursuant to 29 U.S.C. § 705(20)(A)(i) or 42 U.S.C. § 12102(1), the applicable definitional provisions in the Rehabilitation Act and the Americans with Disabilities Act. Nonetheless, because this element has not been disputed, and Plaintiff has alleged that he is disabled, the Court will accept it as established for the purposes of this Motion.

[3]    Once a plaintiff has established a *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff to establish that the defendant's stated nondiscriminatory reason was pretextual. A plaintiff may meet this burden by offering evidence sufficient to establish that the defendant's proffered reason (1) had no basis in fact, (2) did not actually motivate the defendant's decision not to hire the plaintiff, or (3) was insufficient to warrant the refusal to hire the plaintiff. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 576 (6th Cir. 2006).

did not assert their legitimate, nondiscriminatory reason for the hiring decision until the Reply brief, and Plaintiff had no recourse to respond to that brief without leave of the Court.[4] (Def.s' Reply at 8; *see* E.D.TN. 7.1(d).) The Court finds that it would be improper to assess a Motion for Partial Summary Judgment with the benefit of Defendants' asserted legitimate nondiscriminatory reason, but without any evidence of pretext from Plaintiff. As such, the Court concludes that it cannot address the rest of the burden-shifting framework on the Motion before it. Moreover, Plaintiff did not have the opportunity to provide the Court with direct evidence of discrimination.[5] Therefore, because Defendants' argument

---

[4] The Court acknowledges that Plaintiff could have legitimately moved for leave to file a surreply on this basis. It seems likely, however, that this would have started an entirely new round of briefing on an argument that was not asserted by Defendants. In fact, even in the Reply brief, Defendants maintained that the elements of the *prima facie* case were those outlined in their initial brief. (Def.s' Reply at 6-8.) Defendants only offered the legitimate nondiscriminatory reason as a concession if the Court disagreed with this argument and found that Plaintiff had established a *prima facie* case. (*Id.* at 8.) The Reply brief is not a proper filing in which to introduce a novel argument or to commence the analysis of the second and third steps of the burden-shifting framework.

[5] Simply put, the Court cannot and will not speculate as to what Plaintiff would have alleged as direct evidence or evidence of pretext. The Court observes that this could have easily been avoided if Defendants had addressed all parts of the burden-shifting framework in its initial brief and provided Plaintiff with the opportunity to respond to all points. Instead, Defendants relied on a narrow argument that has now failed, and Plaintiff had no obligation to address arguments that were not made in the Motion. Defendants' failure to cover the bases does not create an obligation in the Court to review the entire record and guess at what Plaintiff might have alleged to counter the legitimate stated reason.

The Court further notes that Defendants' argument rests entirely on the contradictory claims asserted in Plaintiff's Complaint, coupled with statements Plaintiff made about his own belief as to why he was not selected for the positions. The Court is aware that Plaintiff could not succeed on both a Title VII claim and a Rehabilitation Act claim, but the Court observes that Fed. R. Civ. P. 8(d)(3) states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."

The Supreme Court of the United States has stated that "alternative pleading is expressly sanctioned by [Rule 8] and . . . recourse to this method of pleading [would not] vitiate[] the other Counts of the complaints." *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 352 U.S. 457, 467 (1957). The mere existence of Plaintiff's Title VII claim, therefore, is not an admission that forecloses the potential success of his Rehabilitation Act claim. *See Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) (stating that "[i]n light of the liberal pleading policy embodied in [Rule 8], we hold that a pleading should not be

was based on Plaintiff's failure to establish the elements of a *prima facie* case, and because the Court concludes that Defendants' argument on this basis is without merit, Defendants' Motion for Partial Summary Judgment as to Plaintiff's Rehabilitation Act claim is **DENIED**.

### B.    EEO Administrative Remedies

Defendants argue that Plaintiff cannot assert Title VII or Rehabilitation Act claims for VPAs 022052, 022393, and 021166, all Knoxville lineman and lineman foreman positions, because Plaintiff failed to exhaust his administrative remedies. (Def.s' Mem. at 2-3.) Defendants contend that the EEOC regulations require individuals to contact an EO counselor within 45 days after the allegedly discriminatory event, receiving counseling, and filing a formal complaint with the EEOC before filing a lawsuit. (*Id.* at 11-12 (citing subsections of 29 C.F.R. §§ 1614.105 and 1614.106)). Defendants claim that Plaintiff did not contact an EO counselor until June 7, 2007, which was at least six months after the time that these positions were filled. (*Id.* at 3-5.) Accordingly, Plaintiff's failure to comply with the EEOC regulations renders his claims for these three positions untenable. (*Id.* at 12-13.)

Plaintiff states that he is asserting Title VII and Rehabilitation Act claims for two lineman positions in Knoxville in 2006 and the Morristown lineman foreman position. (Pl.'s Resp. at 14.) Plaintiff contends that he can use the 2006 nonselections as background evidence of discrimination. (*Id.* at 15.) Plaintiff further asserts that the nonselections

---

construed as an admission against another alternative or inconsistent pleading in the same case."). Moreover, Plaintiff's statements appear to be neither evidence nor admissions, but merely his opinion or belief–or *allegation–as* to what motivated the decision.

constitute valid claims pursuant to equitable tolling because Plaintiff was not aware of the pattern of discrimination until he was not selected for the Morristown position. (*Id.* at 15-16.)

As a preliminary matter, the Court notes that 29 C.F.R. § 1614.105 requires individuals who believe themselves to be on the receiving end of discrimination to contact an EO counselor within 45 days of the alleged matter. 29 C.F.R. § 1614.105(a)(1). This EEOC regulation covers both racial and disability discrimination and thus applies to both of Plaintiff's claims. The individual must also file a complaint with the agency accused of discrimination. 29 C.F.R. § 1614.106. In the context of a Title VII claim, the Sixth Circuit has recognized that this 45 day period "is not a jurisdictional prerequisite, and can be tolled where principles of equity demand it." *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (citations omitted). The *Steiner* court further recognized that equitable tolling should only be allowed sparingly in "compelling" cases. *Id.* (citations omitted).

To determine if equitable tolling should apply, the Court must review five factors: "(1) whether the plaintiff had actual notice of the time restraint; (2) whether [he] had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing [his] rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint." *Id.*

In regards to the first factor, Defendants appear to rely on a statement in Plaintiff's sworn statement that he "filed a charge back in 1996 . . . against the ex-foreman up in

Johnson City." (Def.s' Reply at 13 (citing to Gist Sworn Statement at 28-29.))[6] There is no information in the record, however, to indicate that this was an EEOC complaint. Instead, it seems to the Court to be more like an internal complaint against another employee; Plaintiff stated that he "filed a charge against him because he called me curse words out of – out of his management department as a foreman position" and that he felt that making the charge hurt him for future promotions. (Gist Sworn Statement at 29.) The Court cannot determine from this vague information if Plaintiff filed an EEOC complaint or spoke with an EO counselor; furthermore, taking such action in 1996 may not constitute actual notice of the 45 day period ten years later.

It is also unclear to the Court whether Plaintiff had constructive notice of the time restraint. There is no evidence in the record that Plaintiff had retained a lawyer after his rejection from the 2006 positions.[7] The Court has no information about the posting of EEOC regulations at Plaintiff's workplace such that Plaintiff might have been aware of the time restraint. In addition, Defendants did not necessarily make Plaintiff aware that he was rejected for these 2006 positions; on occasion, Plaintiff found out from co-workers that someone else had been selected for those positions. (*Id.* at 21-22.) The Notice of Partial Dismissal sent to Plaintiff merely states that "[y]our explanation for not contacting an EEO counselor within 45 days of the events was that you were not notified by management of

_____

[6] Actually, Defendants' cite reads "(Ct. Doc. 22-5 at 28-29, Final Agency Decision.)." (Def.s' Reply at 13.) Court Document 22-5 is Plaintiff's Sworn Statement, not the FAD. The Court is uncertain if Defendants are pointing to both the Sworn Statement and a statement contained somewhere in the FAD, which is Court Document 22-3 and does not contain pages 28-29. In any event, the Court has reviewed the FAD and found no statement by Plaintiff that he had previously filed an EEOC complaint.

[7] "Constructive notice of a time limit will usually be imputed when the plaintiff retains an attorney within the limitations period." *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 376 (6th Cir. 2002) (citation omitted).

the status of the positions. . . . You did not state that you were unaware of the requirement to contact the EEO counselor in a timely manner." (Court Doc. 22-2 at 3.)

The Court finds that this explanation does not indicate that Plaintiff had actual or constructive knowledge of the time limit. It appears to the Court that there is no evidence in the record that Plaintiff would have been actually or constructively aware of the tolling of the 45 day period and that Plaintiff may not have even been notified as to the start of this period.

The Court does not find, however, that Plaintiff's ignorance of the time restraint is reasonable. Although Plaintiff has been diligent in pursing this claim, the overall circumstances do not suggest that Plaintiff thought his rights were being violated when he was not selected for the Knoxville positions. Plaintiff asserts that he did not notice the pattern of discrimination until he was rejected for the Morristown position; however, if this is true, it seems fair to say that Plaintiff did not have any direct or indirect evidence that the prior rejections were based on race or disability and did not feel that he was a victim of discrimination at those times. The Court finds that Plaintiff could have easily discovered and initiated the appropriate process if he believed the motivation for these nonselections to have been discriminatory.

Finally, Defendants argue that prejudice is presumed if they now have to defend against tolled claims. (Def.'s Reply at 13.) The Court finds that Defendants will suffer prejudice if it allows Plaintiff to proceed with claims on each of these positions. Although this prejudice is tempered somewhat by the fact that the information about Plaintiff's rejections from the earlier positions will likely be introduced as part of Plaintiff's work background, if nothing else, it will still be significant. The Court finds that Defendants

would be substantially prejudiced if Plaintiff were allowed to proceed with claims based on all the rejections when he has essentially acknowledged that he did not suspect any discriminatory motive behind his rejection from those positions.

Accordingly, the Court concludes that Plaintiff may not proceed with Title VII and Rehabilitation Act claims based on the Knoxville positions, and Defendants' Motion for Partial Summary Judgment as to this issue is **GRANTED**. The Court notes, however, that this ruling does not necessarily foreclose Plaintiff's ability to introduce some evidence of the nonselections for the Knoxville positions as background information.

## IV. CONCLUSION

For the reasons explained below, the Court **ORDERS** that Defendants' Motion for Partial Summary Judgment [Court Doc. 20] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may proceed on his Rehabilitation Act claim as to the Morristown position, but Plaintiff may not proceed with Title VII or Rehabilitation Act claims as to the Knoxville positions.

**SO ORDERED** this 14th day of June, 2010.


_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE